Issued December 17, 2019
Corrected December 17, 2019

**Supreme Court**

| | | |
|---|---|---|
| Joyce Duffy | : | |
| v. | : | No. 2017-348-Appeal. |
| | | (KC 14-76) |
| Bartolomie Scire et al. | : | |
| | | |
| Joyce Duffy et al. | : | |
| v. | : | No. 2017-373-Appeal. |
| | | (KC 15-960) |
| Estate of Bartolomie Scire. | : | |
| | | |
| Joyce Duffy | : | |
| v. | : | No. 2017-374-Appeal. |
| | | (KP 15-25) |
| Estate of Bartolomie Scire. | | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Joyce Duffy | : | |
| v. | : | No. 2017-348-Appeal. |
| | | (KC 14-76) |
| Bartolomie Scire et al. | : | |
| | | |
| Joyce Duffy et al. | : | |
| v. | : | No. 2017-373-Appeal. |
| | | (KC 15-960) |
| Estate of Bartolomie Scire. | : | |
| | | |
| Joyce Duffy | : | |
| v. | : | No. 2017-374-Appeal. |
| | | (KP 15-25) |
| Estate of Bartolomie Scire. | | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## OPINION

**Justice Robinson, for the Court.** The plaintiffs, Joyce Duffy and Donna O'Reilly, appeal from a June 7, 2016 judgment of the Superior Court.[1] The Superior Court affirmed certain interrelated rulings of the Warwick Probate Court and held, *inter alia*, that Bartolomie Scire, the father of the two plaintiffs and of defendant Carolyn Scire,[2] had validly executed a last

---

[1]    On June 7, 2016, the hearing justice in the Superior Court dealt with three consolidated cases: KC-2014-0076 (which we find it unnecessary to address); KP-2015-0025 (hereinafter referred to as "the initial probate court case"); and KP-2015-0960 (hereinafter referred to as "the second probate court case").

[2]    The three children of Bartolomie Scire who are involved in this case are Joyce Duffy, Donna O'Reilly, and Carolyn Scire. In this opinion we shall sometimes refer to them by their first names only. In so doing, we intend no disrespect.

- 1 -

will and testament on June 9, 2011.[3] The plaintiffs contend that the hearing justice erred in so ruling given the fact that, on the date when Mr. Scire executed his last will and testament (June 9, 2011), Mr. Scire, in their view, continued to be subject to a temporary limited guardianship, which guardianship included a specific provision prohibiting Mr. Scire from "do[ing] any estate planning[,] including but not limited to the revoking or drafting of any Last Will and Testament * * *." The plaintiffs contend that that specific provision remained in effect until the attorney who had been appointed to serve as Mr. Scire's guardian was formally discharged by the Probate Court in 2012. The defendants contend that, at the time when he drafted the last will and testament in question, Mr. Scire was no longer subject to the control of a guardian and thus was free to execute the last will and testament.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

This case marks yet another regrettable chapter in the bitter and protracted family dispute between Bartolomie Scire's three daughters: plaintiffs Joyce Duffy and Donna O'Reilly on the one hand and defendant Carolyn Scire on the other.[4]

---

[3]    On June 9, 2011, Mr. Scire also executed a quitclaim deed, the validity of which was previously challenged by plaintiffs. However, plaintiffs acknowledged at oral argument before this Court that the question of the validity of the quitclaim deed has become moot due to the fact that, on April 7, 2016, the property was foreclosed upon. Accordingly, the validity of the quitclaim deed need not be addressed by this Court. *See H.V. Collins Co. v. Williams*, 990 A.2d 845, 848 (R.I. 2010) ("This Court will not review a case in which the parties no longer have an articulable stake in the outcome.").

[4]    This Court has previously been called upon to decide another contested issue relative to this case. *See Duffy v. Estate of Scire*, 111 A.3d 358 (R.I. 2015) (*Duffy I*).

# A

## The Initial Probate Court Case

This most recent phase of the longstanding dispute between the parties began on February 19, 2009, when plaintiffs filed a petition for the appointment of a temporary guardian over Mr. Scire in the Warwick Probate Court. On April 9, 2009, the Probate Court granted that petition, appointed Attorney John Vallone as temporary limited guardian, and included in its decree the following highly pertinent provision:

> "8. That, Bartolomie Scire shall not do any estate planning[,] including but not limited to the revoking or drafting of any Last Will and Testament, * * * Power of Attorney, * * * or any other estate planning documents."

Several months later, on March 23, 2010, Mr. Scire and Carolyn Scire filed a "Petition to Dismiss the Temporary Guardianship." On April 29, 2010, the probate judge held a hearing on that petition, at which time he heard testimony from Lorna Russell, M.D., Mr. Scire's primary care physician. Doctor Russell testified that she had completed a "decision-making assessment tool" (DMAT) in March of 2010, after having assessed Mr. Scire in January of that year. According to what is set forth in the DMAT, which document was admitted into evidence and about which Dr. Russell testified at the hearing, Mr. Scire was not in need of a substitute decision maker. On December 13, 2010, the Probate Court issued a "Decision and Order" granting the petition to dismiss the temporary guardianship.[5]

---

[5] On January 7, 2011, plaintiffs appealed the December 13, 2010 decision of the Warwick Probate Court to the Superior Court. On March 29, 2011, a justice of the Superior Court dismissed that appeal on procedural grounds. The plaintiffs then appealed that decision to this Court. *See Duffy I*, 111 A.3d at 359. On April 1, 2015, this Court, having reached a different conclusion about the procedural issue, vacated the decision of the Superior Court and remanded the record to the Superior Court for a hearing on the merits. *Id.* at 368-69. However, Mr. Scire died before the case could be heard on the merits in that tribunal.

Significantly, on June 9, 2011 (*i.e., after* the Probate Court's December 13, 2010 Decision and Order granting the petition to dismiss the temporary guardianship), Mr. Scire executed his last will and testament.

Some months later, on July 27, 2012, the Probate Court issued a Decision and Order which reads in pertinent part as follows:

> "1. That this Court entered a Decision and Order on December 13, 2010 dismissing the Temporary Guardianship of Bartolomie Scire and denying the Petition for Appointment of a Permanent Guardian.[6]
>
> "* * *
>
> "9. That the Temporary Guardian has presented the Probate Court with a Third Account and with a Fourth Account."

The July 27, 2012 Decision and Order further stated: "[T]he Temporary Guardian [John Vallone] is discharged from his bond."

## B

## The Second Probate Court Case

Mr. Scire died on May 28, 2015. Upon his demise, Carolyn, in her capacity as the executrix designated in Mr. Scire's last will and testament, filed the June 9, 2011 will in the Warwick Probate Court in order to probate his estate. The plaintiffs objected to the will and sought to invalidate it. In September of 2015, the Probate Court declined to invalidate the will, and plaintiffs appealed that order to the Superior Court. That appeal to the Superior Court was consolidated with the initial probate court case (*see* Part I.A., *supra*) and another tangentially

---

6    It is significant that paragraph "1" of this July 27, 2012 Decision and Order specifically stated that the temporary guardianship had been dismissed on December 13, 2010 (*i.e.*, several months before Mr. Scire executed his last will and testament).

related case (which we need not address in view of the manner in which we ultimately resolve the controversy concerning the validity of the will).

## C

## The Superior Court's Ruling

On June 7, 2016, a justice of the Superior Court (the third justice of that court to have grappled with this case)[7] rendered a judgment in defendants' favor. In admirably lapidary language, he held that the Probate Court's Decision and Order of December 13, 2010 had "dissolved all portions of the Guardianship restricting Bartolomie Scire's ability to make a will," and he stated that he agreed with the Probate Court "in all material aspects." He added that he could not perceive any error in the Probate Court's decision.

The plaintiffs timely filed a notice of appeal, arguing that, due to the doctrines of law of the case, *res judicata*, and collateral estoppel, the last will and testament which Mr. Scire executed on June 9, 2011 was legally void.[8]

---

[7] The record reflects that different justices of the Superior Court have issued mutually inconsistent rulings as to the validity of the last will and testament, and the parties have therefore addressed the "law of the case" principle in their briefs. However, in view of the analytical route that we are following to decide this case, we need not delve into the intricacies of that sometimes elusive jurisprudential principle. This is in keeping with "our usual policy of not opining with respect to issues about which we need not opine * * *." *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 42 n.4 (R.I. 2009); *see Summit Insurance Co. v. Stricklett*, 199 A.3d 523, 533 (R.I. 2019).

[8] In view of the grounds upon which we base our decision in this case, there is no need for us to reach plaintiffs' arguments concerning *res judicata* and collateral estoppel. As for their "law of the case" argument, *see* footnote 7, *supra*.

## II

## This Appeal

### A

### Standards of Review

The Superior Court reviews appeals from the Probate Court in a *de novo* manner. *Lett v. Giuliano*, 35 A.3d 870, 876 (R.I. 2012).

This Court employs a *de novo* standard when it reviews Superior Court rulings which are based on an alleged error of law. *N & M Properties, LLC v. Town of West Warwick*, 964 A.2d 1141, 1144 (R.I. 2009). Our review in such a situation is conducted in a *de novo* manner due to the fact that "this Court is in the best position to decide the merits of a given question of law." *Id.* (internal quotation marks omitted).

In addition, "[w]hen we review the factual findings of a trial justice sitting without a jury, we accord those findings great deference." *Lamarque v. Centreville Savings Bank*, 22 A.3d 1136, 1140 (R.I. 2011). Similarly, "[w]e accord great weight to a trial justice's determinations of credibility, which, inherently, are the functions of the trial court and not the functions of the appellate court." *JPL Livery Services, Inc. v. Rhode Island Department of Administration*, 88 A.3d 1134, 1142 (R.I. 2014) (internal quotation marks omitted).

### B

### Analysis

After a careful review of the record, we have concluded that the last will and testament which Mr. Scire executed on June 9, 2011 is not invalid as a result of the previous temporary guardianship because, on the date when he executed it, the Probate Court had already determined (on December 13, 2010) that Mr. Scire had the requisite capacity to make his own decisions and

had granted the petition to dismiss the temporary guardianship. Accordingly, the earlier restriction imposed by the Probate Court on April 9, 2009 limiting Mr. Scire's ability to execute a last will and testament had become inoperative. *See* G.L. 1956 § 33-15-18(a)(2); *see also Estes v. Probate Court of Town of East Providence*, 36 R.I. 57, 60, 88 A. 977, 978 (1913).

It is crucially important to bear in mind that two radically different (and temporally distinct) juridical events are at issue in this case: (1) *the dismissal* of the temporary limited guardianship over the ward (Mr. Scire), which dismissal resulted in the ward being at liberty to go about his business in an unrestricted manner; and (2) *the discharge* of the guardian (Attorney John Vallone), which discharge resulted in the guardian being relieved of his fiduciary status as a guardian as a result of the Probate Court having accepted the financial accountings which he had submitted.[9]

It will be recalled that, at the hearing on the petition to dismiss the temporary guardianship on April 29, 2010, the Probate Court heard testimony from Mr. Scire's primary care physician, Dr. Lorna Russell of the Veterans Administration Hospital. She had completed a DMAT form with respect to Mr. Scire, and that form was submitted as an exhibit. The DMAT contains a section wherein the physician is called upon to "indicate [an] opinion regarding

---

[9] Justice would be disserved if, after a formal judicial determination that no guardianship continued to be necessary, the ward were nonetheless required to remain under guardianship until such time as the guardian has prepared and completed such accounts as are required and has been discharged by the Probate Court. The distinction between the dismissal of a guardianship and the discharge of a guardian is an important one. In this regard, it should be borne in mind that a guardianship necessarily has a significant impact on the ward's liberty interest.

Notably, in the instant case, the temporary limited guardianship was dismissed in December of 2010, but the guardian was not discharged from his bond until July of 2012. One can readily imagine other situations where, after the dismissal of the guardianship but before the formal discharge of the guardian, said guardian died or became incapacitated or was out of the country for a lengthy period of time. From both a logical and legal perspective, such occurrences regarding the guardian should not have a bearing on the immediate effectiveness of a dismissal of a temporary guardianship.

whether the individual needs a substitute decision-maker in any of the following areas:" financial matters, health care matters, relationships, or residential matters. Doctor Russell marked "NO" with respect to each of those four categories. In granting the petition to dismiss the guardianship, the Probate Court in 2010 expressly found that Dr. Russell was "unequivocal" in her testimony that, "based upon her assessment * * *, [Mr. Scire] was not in need of a guardianship, temporary or otherwise." The probate judge then granted the petition to dismiss the temporary guardianship. We have reviewed the DMAT, and it is clear to us that Dr. Russell's evaluation is fully supportive of the probate judge's decision to terminate the temporary guardianship in 2010.[10]

Accordingly, we hold that, from the date when the Decision and Order terminating the temporary guardianship was signed by the probate judge and entered by the clerk (December 13, 2010), Mr. Scire was no longer under a temporary limited guardianship and was no longer restricted by the conditions that were part of the original decree granting the temporary limited guardianship. *See In re Oliveira*, 765 A.2d 840, 842 (R.I. 2001) (stating that "a decree [from the Probate Court] becomes effective when it is signed by the judge and entered by the clerk"). Accordingly, in our judgment, there was no impediment to the last will and testament that Mr. Scire executed on June 9, 2011.

For the sake of completeness, we note that, on July 27, 2012, the Probate Court issued a Decision and Order that discharged the temporary limited guardian from his duties. The probate judge reviewed the several accountings submitted by Attorney Vallone and accepted the final accounting submitted by him; he then stated that "the Temporary Guardian is discharged from

---

[10] Out of respect for the late Mr. Scire and his family, we shall refrain from setting forth the details of Mr. Scire's evaluation. Suffice it to say that Dr. Russell's evaluation provides a solid basis for the Probate Court's ruling dismissing the guardianship.

- 8 -

his bond." At that point, the temporary limited guardian's duties and responsibilities came to an end. Most significantly, however, the restriction about engaging in estate planning, including revoking or drafting a will, that had been imposed on the ward (Mr. Scire) had come to an end long before that.

Because the condition limiting Mr. Scire's ability to engage in estate planning, including revoking or drafting a last will and testament, was extinguished by the Probate Court in 2010, the last will and testament that Mr. Scire executed in 2011 was valid.

## III

### Conclusion

Accordingly, we affirm the judgment of the Superior Court. The record in this case shall be remanded to the Superior Court so that it may be remanded to the Probate Court for such further proceedings as are necessary.

**Justice Goldberg, dissenting.** In February 2009, the plaintiffs, two of Bartolomie Scire's three daughters, through counsel, filed a petition in the Warwick Probate Court seeking a temporary guardianship of their father, pending the appointment of a permanent guardian. A probate decree entered on April 9, 2009, appointing John L. Vallone, Esq.,[1] temporary guardian and specifically prohibiting Scire from entering into any contracts, revoking or executing a last will and testament, granting a power of attorney or any other estate planning documents, but retaining all decision-making relative to health care, association, and residence. My conscientious *de novo* review of this voluminous record—which tragically spans more than a decade—reveals that *every* prohibition set forth in this decree was violated, all to the detriment

---

[1] I pause to note that the record before us demonstrates that Attorney Vallone executed his responsibilities admirably throughout these proceedings.

- 9 -

of the plaintiffs, through no fault of the plaintiffs or their stalwart counsel. Because the decision of the majority is not a fair and just result, I dissent.

I note at the outset that, notwithstanding the restrictions set forth in the decree appointing the temporary guardian, including prohibiting Scire from entering into any contracts, drafting or revoking a will, or granting a power of attorney, Scire nonetheless retained the absolute right to make decisions relative to his health care, association, and residence, and he did so. Thus, the limitations placed on Scire were minimal and sorely needed. He was suffering from Alzheimer's disease, his bills were unpaid, and his finances were characterized by the Probate Court as a "quagmire of confusion[.]" This guardianship also appears to have been a protective measure against defendant Carolyn's conduct.[2] Thus, the majority's calamitous warning about potential injustice to the ward's liberty interest that would arise if the guardian—as mandated by law— remained in place until he submitted a final account and was discharged, is simply incorrect. There were no such restrictions on Scire's liberty. Additionally, in order to reach the result in this case, the trial justice and the majority have surgically separated portions of the probate decree and redefined the statutory role of the guardian. The majority also overlooks and misconceives the evidence in this case.

---

[2] My *de novo* review of the record in this case reveals that, before the limited guardianship was in place, Scire's finances were in disarray. He initially informed the guardian *ad litem*, who was appointed by the probate judge, that he made a $200,000 investment with Carolyn in a horse farm that was earning millions of dollars. Yet the temporary guardian reported that he was monitoring Scire's bank accounts and assets. The horse farm, Ocean Run Farm, was in financial trouble. All payments concerning the care and upkeep of the horses—for which there were no interested buyers—had stopped.

The temporary guardian also attempted a short sale of Scire's real property located on West Shore Road in Warwick, which was heavily mortgaged and in a dilapidated condition; he was unsuccessful. He also reported that Scire was delinquent in real estate tax payments for all property he owned and water and sewer assessments. Attorney Vallone was making monthly payments for water and sewer fees in an effort to reduce those balances.

The majority overlooks the fact that in the December 13, 2010 order that dismissed the temporary guardianship, the probate judge appointed a conservator over Scire.[3] Although the majority declares that "no guardianship continued to be necessary," the probate judge decided that a conservatorship was appropriate. Indeed, the decree declared that "[t]he appointment of a [c]onservator will require the [Probate] Court to continue it[s] supervision of *activities* involving S[cire]." (Emphasis added.) I find the term "activities" to be quite relevant in this case, because it connotes more than finance and banking duties. The American Heritage Dictionary defines "activity" as "[a] specified pursuit in which a person partakes." The American Heritage Dictionary of the English Language 17 (5th ed. 2011). Clearly, Scire's activities were to be supervised, and he was not left to fend for himself; the probate judge determined that a conservatorship was necessary.

Importantly, in the context of this case, there is no difference between a guardianship and a conservatorship. *See* G.L. 1956 § 33-15-44 (statutory provision entitled "Conservator for incompetent person—Disability to contract[,]" which provides that the person over whom a conservatorship is ordered "shall be under the *same disability to contract* as a person for whom an application for guardianship has been made is under by virtue of the provisions of § 33-15-13"). Thus, the majority's opinion that somehow bifurcates the decree appointing the temporary guardian and its conclusion that Scire "was no longer restricted by the conditions that were part of the original order granting the temporary limited guardianship" is also wrong.

---

[3] The December 13, 2010 order that purported to accept Attorney Vallone's resignation as temporary guardian also appointed Mark B. Heffner as conservator. It does not appear that Mr. Heffner performed this duty before July 27, 2012. The order that accepted Attorney Vallone's resignation and discharged his bond reflected that Mr. Heffner declined the appointment. Significantly, Attorney Vallone remained the only person authorized to conduct Scire's financial affairs for over eighteen months, and Scire was always free to make any decisions about his health care, association, and residence.

Furthermore, what is clear from the record is that Attorney Vallone was appointed temporary guardian on April 9, 2009, and submitted *two* resignations. The first resignation, submitted on November 19, 2010, is reflected in the December 2010 decree. The second resignation, submitted on May 18, 2012, was accepted on June 7, 2012. During this period, the Veterans Administration appointed a guardian for Scire, and Attorney Vallone continued to act on Scire's behalf, well beyond performing limited banking and financial duties as the majority suggests.

The decrees accepting Attorney Vallone's first and second resignations specifically provided that "[t]he Fiduciary *shall not be discharged* until the allowance of a final account and the transfer of all assets and records to the *Successor Fiduciary*." (Emphasis added.) A conservator was appointed on December 13, 2010. It is clear from the record, as found by a justice of the Superior Court in the declaratory-judgment action (the first trial justice), that Attorney Vallone continued to serve as Scire's guardian. He was not discharged until July 27, 2012, when the Probate Court issued a decree accepting the third account "covering the time period from September 28, 2011 through April 20, 2012[,]" and the fourth and final account "covering the time period from April 20, 2012 through June 19, 2012[.]" It was at that point that the probate judge directed the removal of Attorney Vallone as the account holder for Scire's bank account with Bank of America, and he was discharged from his bond. For the first time, the probate judge declined to appoint a successor fiduciary.

Additionally, even a cursory review of Attorney Vallone's reasonable requests for fees reveals that, during 2012, the Veterans Administration appointed a temporary guardian for Scire. Attorney Vallone met with the guardian in May 2012. He also conferred with Cornerstone Adult Services on a monthly basis until May 2012 concerning Scire's evaluation. He submitted his

second resignation on May 18, 2012, and it was accepted on June 7, 2012. Before the Probate Court accepted Attorney Vallone's second resignation, Scire executed a new will, the deed of conveyance, and the power of attorney.

Each of the three claims before this Court arose before Attorney Vallone's second resignation was accepted and during the conservatorship—which may or may not have been in place—and, significantly, while plaintiffs' appeal from the dismissal of the December 13, 2010 decision and order was pending before this Court. That case has its own painful history.

On January 7, 2011, plaintiffs timely appealed to the Superior Court from the December 13, 2010 decision and order that dismissed the temporary guardianship. However, a justice of the Superior Court erroneously dismissed their appeal. Although plaintiffs timely appealed from the dismissal, more than four years would elapse before the appeal was decided because of the state of the record before us. This Court issued two orders remanding this case to the Superior Court on two separate occasions; first for an evidentiary hearing and second for fact-finding and credibility determinations from that hearing. After the first remand, we issued another order soliciting the input of counsel on the question of "what use the Court may make of the hearing testimony without such fact-finding." Counsel's response led to the second remand for fact-finding and credibility determinations. Ultimately, we issued our opinion reversing the trial justice and remanding this case to the Superior Court for a hearing on the merits. Mr. Scire died the following month. It is the events that transpired while this case was pending in the Supreme Court, in violation of the prohibitions set forth in the original decree, that have led to this appeal and my dissent.

One of the issues raised by plaintiffs and sidestepped by the majority is the question of whether the December 13, 2010 decision and order dismissing the temporary guardianship and

- 13 -

restricting Scire from entering into contracts, was suspended during the pendency of this appeal. In his July 27, 2012 decision that discharged Attorney Vallone for the second time, the probate judge rejected plaintiffs' arguments that a suspension was in place. He declared that the provisions of G.L. 1956 § 33-23-2 "regarding suspension of probate court order[s] or decrees pending appeal is enforceable only while the probate court order is on appeal to the appropriate Superior Court" and not the Supreme Court. This is error. Parties have a right to be heard. A dismissal by the Superior Court from a decree of the Probate Court is not a final decision on the merits. *See McLaughlin v. Dunlop*, 68 R.I. 4, 4-5, 26 A.2d 3, 4-5 (1942) (holding that the operation of a Probate Court decree is suspended until appeal is finally determined). It is my opinion that whether there was a suspension of the December 13, 2010 decision and order of the Probate Court is conclusive and should have been addressed by the majority.

Furthermore, it is undisputed that, while the appeal was pending in this Court, Scire executed a will that excluded plaintiffs from sharing in his estate and conveyed his residence, located at 115 Spooner Avenue in Warwick, Rhode Island, to himself and Carolyn, as joint tenants with a right of survivorship.[4] Mr. Scire also executed a power of attorney in favor of Carolyn on June 6, 2012.

Turning to the appeal before us, the three consolidated cases currently before this Court stem from the quitclaim deed, the will, and the power of attorney. These events—which were prohibited in the original decree—occurred *before* the Probate Court accepted the temporary guardian's second resignation and he was discharged. On June 7, 2012, plaintiffs sought the appointment of a successor temporary guardian. That request was denied by the Probate Court on July 27, 2012. The plaintiffs soldiered on.

---

[4] Because this deed was not recorded until December 12, 2012, plaintiffs had no way of discovering this real estate transfer.

- 14 -

On January 28, 2014, plaintiff Joyce Duffy filed a verified complaint in Superior Court seeking declaratory and injunctive relief, and alleging that Scire, who had been placed at Orchard View Manor in East Providence, had executed a power of attorney—as verified by Bank of America—appointing Carolyn as Scires's attorney-in-fact.[5]  On May 23, 2014, the first trial justice, in a comprehensive written order, declared that the appointment was void because the temporary guardianship was in force.  Specifically, she declared that, from the time Attorney Vallone's resignation was accepted on December 13, 2010, until the filing of his final report and discharge on July 27, 2012, Attorney Vallone continued to assist Scire in his finances, was the *only* named account holder on his bank account, and had not yet satisfied the conditions imposed on him when the resignation was accepted.  The temporary guardian had not filed a final account, transferred any of the ward's assets and records, or obtained a final discharge. The trial justice relied on G.L. 1956 § 33-18-4 for authority.[6]  That provision provides as follows:

> "*Whenever* an executor, administrator, or guardian shall in writing resign his or her trust to the probate court having jurisdiction of the estate, the court may accept the resignation and, upon petition, appoint a successor, who shall have all the power that the person resigning had unless provision to the contrary is made by will; *but no resignation shall be accepted until the person resigning shall have settled his or her accounts with the court*." Section 33-18-4 (emphasis added).

Thus, as a matter of law, the Probate Court was without authority to discharge Attorney Vallone "until the person resigning shall have settled his or her accounts with the court." *Id.*  The first trial justice specifically declared:

---

[5] The verified complaint also alleged that Carolyn informed Joyce Duffy that she "could only have supervised visitation with [her] father," and that, when her father passed away, "he would be cremated and his remains scattered" before plaintiffs were notified of his passing.

[6] Although the order cites G.L. 1956 § 33-18-5, it is apparent this is a scrivener's error.

- 15 -

"Despite the probate court[']s acceptance of Mr. Vallone's first resignation, it did not become immediately effective because the conditions contained therein were not satisfied and the final discharge was not entered. Therefore, [Mr.] Vallone remained Mr. Scire's temporary limited guardian until the probate court's July 27, 2012, decision and order that accepted [Mr.] Vallone's resignation, removed him from the ward's bank account, and discharged Mr. Vallone's bond. As such, when Mr. Scire executed the June 6, 2012, power of attorney, he was still under Mr. Vallone's temporary limited guardianship that provided that Mr. Scire shall not enter into any contracts."

The second trial justice, in the case before us, refused to apply the law of the case doctrine and proceeded to overrule this decision. Moreover, it is important to note that the second trial justice specifically declared that the decision in the declaratory-judgment action was a decision on the merits and arose from the same set of facts. Yet he refused to apply the law of the case doctrine. His reasons for doing so are erroneous. The second trial justice declared that this was an interlocutory ruling that he was entitled to disregard based on an "expanded record." He then pointed to the September 2015 decision of the Probate Court—over which he was tasked with conducting *de novo* review—as the expanded record. There was no expanded record; the facts were undisputed, the events occurred simultaneously, and the issues turned on whether there was a guardianship in place at the time Scire executed the will, conveyed his property, and gave Carolyn access to his bank accounts.

The second trial justice ultimately concluded that the December 2010 decision and order terminating the temporary guardianship and dismissing the petition to appoint a permanent guardian had "dissolved all parts of the 2009 order appointing a temporary limited guardian, save those requiring" Attorney Vallone "to provide an accounting." The first trial justice decided the exact opposite. She got it right. The majority decision skirts the law of the case issue and, by way of footnote, declares that "in view of the analytical route that we are following to decide this

case, we need not delve into the intricacies of that sometimes elusive jurisprudential principle." Because this is not the decisional path this Court should take, I dissent. Litigants should be free to rely on a trial justice's written decision.

Because I am of the opinion that there is an abundance of reversible error on the face of this record, which I have carefully and conscientiously reviewed, including the appointment of a conservator, the fact that an appeal was pending in this Court, that Attorney Vallone continued to perform the functions of a guardian at least until June 7, 2012, as well as the law of the case doctrine, the judgment of the trial justice should be vacated and the case remanded to the Superior Court with directions to enter judgments for the plaintiffs. Consequently, I dissent.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Joyce Duffy v. Bartolomie Scire et al. <br> Joyce Duffy et al. v. Estate of Bartolomie Scire. <br> Joyce Duffy v. Estate of Bartolomie Scire. |
| **Case Number** | No. 2017-348-Appeal. <br> (KC 14-76) <br> No. 2017-373-Appeal. <br> (KC 15-960) <br> No. 2017-374-Appeal. <br> (KP 15-25) |
| **Date Opinion Filed** | December 17, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Michael J. McCaffrey, Esq. |
| | For Defendants: <br><br> Robert E. Bollengier, Esq. |